UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 1:10-CR-00108 |
|   | : |   |
| v. | : | **OPINION AND ORDER** |
|   | : |   |
| JERRY SPENCER | : |   |
|   | : |   |

This matter is before the Court on Defendant's Motion to Suppress Evidence (doc. 15), and the Government's Response (doc. 16). The Court held a hearing on the matter on January 26, 2011. At that hearing, the Court issued an oral order granting Defendant's motion but stated that a written opinion would follow. Upon reflection and a close review of the hearing transcript, the Court reconsiders that oral decision[1] and hereby DENIES Defendant's motion.

In his motion, Defendant seeks suppression of the firearm at issue in the case as well as all statements made, claiming that the firearm was the fruit of an impermissible search and arrest in violation of the Fourth Amendment, and the statements were given in violation of the Fifth Amendment (doc. 15).

At the hearing, the Court heard from three officers.

---

[1] See, e.g., United States v. Reid, 357 F.3d 574 (6th Cir. 2004)("[A] trial court is empowered to revisit any of its previous non-final rulings in the light of a perceived error or misjudgment, new relevant information, or even its simple conclusion that it may have acted in ill-considered haste").

Officer Johnson testified that, at approximately 3:00 A.M. of the morning of May 29, 2010, he was called to the scene by another officer who was conducting a drug investigation and asked to stop and question a man (later determined to be Defendant) just ahead of a group of people who were walking away from the officers. Officer Johnson approached Defendant, asked him his name and asked if he could see some identification. When asked if a person has to stop and talk to the police if approached, Officer Johnson said, "No, but he did stop and respond." In response to Officer Johnson's request for identification, Defendant said he would go get it and headed to a parked car. When Defendant approached the car, Officer Johnson heard a "thunk...metal on metal" sound on the car, like Defendant had dropped something on the wheel well of the car. Based on his training and experience, Officer Johnson assumed the sound was a gun being dropped on the wheel well of the car.

Upon hearing the noise, Officer Johnson grabbed Defendant's arm in order to subdue him so he could confirm his suspicions. Defendant struggled against the grab and ran from Officer Johnson, who chased after him. When Defendant turned to run up a hill, Officer Johnson, determining that he would not be able to catch Defendant, deployed his taser, hitting Defendant in the head. Defendant was then arrested, and another officer was directed to the car to determine what was dropped. When asked if Defendant had violated anything when he walked away from him to go

to the car, Officer Johnson said he had not. When specifically asked if Defendant had committed a pedestrian violation, which was the notation on the arrest record, Officer Johnson said that he had not. He further testified that he had not been able to do a pat-down because of the struggle that ensued as soon as Johnson grabbed Defendant's arm.

Officer White then testified that "[w]e were in the process of conducting a drug investigation. Another officer had been watching drug transactions take place in that area, so he called for other officers to respond to stop one of the individuals that he had indicated was selling drugs." When he arrived at the scene, the investigating officer pointed out the individual he wanted stopped, but Officer Johnson had already approached him. Officer White then witnessed the struggle between Johnson and Defendant. When asked if, prior to seeing Defendant tussle with Officer Johnson, he had observed Defendant do anything wrong, Officer White said, "No, I didn't." He further testified that when he approached Johnson and Defendant after the tasing and Defendant was in custody, Johnson indicated that he had heard something hit on the wheel well of the car. Officer White then went to the car, where he found the gun at issue on the "wheel...wheelbarrow...front right tire" of the car.

Finally, Officer Cunningham testified that he was the officer conducting the drug investigation, that he was hidden in

3

bushes across the street approximately 60-70 feet from where a group of 3-4 African American men were gathered, and that, using binoculars, he saw someone dressed in all black with white tennis shoes walk out in the middle of the street and do a whistle or a wave when a car would drive by. That car would then drive around the block and return to that location, stop in the middle of the street, where the same man would approach the passenger side of the car for 3-4 seconds, and the car would then drive off. He observed this same patter occur three times.

Based on his training and experience, Officer Cunningham believed that drugs were being sold. He stated that all of his officers knew he was at that location conducting a drug investigation, so he radioed in and told officers that he wanted a black man, approximately 5'10", wearing all black with white tennis shoes stopped for further investigation of possible drug trafficking, drug sales. On cross examination, Officer Cunningham stated that he did not see drugs being sold and did not see any firearms. In addition, he noted that the description of Defendant recorded on the police report was that he was wearing black pants and a white t-shirt but stated that a black hoodie was taken off Defendant during the struggle. Finally, Officer Cunningham testified that, after arresting Defendant, a search of his person revealed what officers believed to be narcotics in his shoe.

No testimony was presented regarding any statements

4

Defendant may have made, so the Court finds moot Defendant's Fifth Amendment challenge and now turns to Defendant's Fourth Amendment challenge.

As a threshold matter, the Fourth Amendment is not implicated by every contact between citizens and the police. Immigration and Naturalization Service v. Delgado, 466 U.S. 210, 215 (1984)("The Fourth Amendment does not proscribe all contact between the police and citizens, but is designed to 'prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'"). Indeed, the Fourth Amendment is implicated only when "the circumstances of [an] encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded...." Id. at 216; see also United States v. Waldon, 206 F.3d 597, 603 (6th Cir. 2000)(an encounter is consensual so long as the officer "refrain[s] from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave"). However, an initially consensual encounter can transform into a seizure or detention within the meaning of the Fourth Amendment if, under the totality of the circumstances, a reasonable person would have believed that he was not free to leave. Delgado, 466 U.S. at 215.

Typically, there are three levels of police/citizen encounters that arise: "(1) the consensual encounter, which may be

5

initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause. Investigative detentions and arrests are considered "seizures" and thus must be conducted consistent with ... Fourth Amendment principles.... The consensual encounter, however, is not a seizure and hence not governed by the Fourth Amendment, as long as [an] officer's actions do not convert it into an investigative detention." United States v. Avery, 137 F.3d 343, 352 (6th Cir. 1997).

"'[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen.'" Illinois v. Lidster, 540 U.S. 419, 425, 124 S.Ct. 885, 890, 157 L.Ed.2d 843 (2004). Of particular relevance to this case, "police questioning, by itself, is unlikely to result in a Fourth Amendment violation." Delgado, 466 U.S. at 216; see also United States v. Foster, 376 F.3d 577, 584 (6th cir. 2004)(noting that in the ordinary course, a police officer is free to ask a person for identification without implicating the Fourth Amendment).

Here, Defendant contends–without legal or factual

support-that the issue in this case is whether Officer Johnson's stop of Defendant was permissible under Terry.[2]  Specifically, Defendant asserted at the hearing that a Terry stop began when Officer Johnson ordered Defendant to stop.  However, the facts do not in any way support that assertion.  Officer Johnson testified that he approached Defendant and asked him, "How you doing?  Can I get your ID for a second?"  Defendant responded, "Okay," and continued to walk away from Officer Johnson, saying, "I'm going to get you my ID."  That exchange falls squarely within the bounds of a consensual police encounter.

In Foster, an officer responded to a complaint that did not identify any particular individuals.  Foster, 376 F.3d at 581.  When he arrived at the scene, he observed the defendant emerge from a still-running car and walk toward a dumpster.  Based on his experience, the officer knew that drug traffickers sometimes hid

---

[2]  The Court notes that, in his motion to suppress, Defendant does not engage in any sort of Terry analysis but, instead, claims as the basis for the motion that he was arrested without probable cause.  Specifically, he asserts that the "only information possessed by the officers specific to Mr. Spencer at the time of the arrest was that he was walking on East Clifton St.  Accordingly, the arrest of Mr. Spencer was not supported by probable cause, and the evidence subsequently obtained by the police must be suppressed" (doc. 15).  Defendant elicited no information regarding the propriety of the arrest, which, contrary to Defendant's assertion in his motion, was indisputably made after Defendant struggled with and attempted to flee from Officer Johnson.  Nor did he present any evidence that would support a finding that he was arrested without probable cause.  The Court thus responds here only to the Terry issue raised at the hearing.

PCP in dumpster areas.  When the defendant walked away from the dumpster, the officer approached him, whereupon he smelled PCP coming from him.  The officer then asked him his name, what he was doing there and whether he had any identification on him.  The Sixth Circuit concluded that this initial encounter was consensual and permitted under the Fourth Amendment.  Foster, 376 F.3d at 584.

The Court sees no factual basis upon which to distinguish Foster and finds that Officer Johnson's questioning of Defendant was a consensual encounter.[3]  See also Delgado, 466 U.S. at 216-17 ("While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.  But if the person refuses to answer and the police take additional steps to obtain an answer, then the Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure.").  Defendant did not refuse to answer Officer Johnson's questions at all.  On the contrary, he engaged with Officer Johnson consensually.  Therefore, the facts that Officer Johnson had not personally witnessed any wrongdoing up to that point and that the police report notes that Defendant was

---

[3]  The Court notes that, based on the sparse briefing before the Court, the Court queried the Government at the hearing, "This is a Terry stop case, is it not?" And the Government responded, "Yes." Clearly, this concession on the Government's part was in error.

8

wearing black pants and a white t-shirt[4] as opposed to the all-black Officer Cunningham noted are irrelevant because officers may engage in consensual encounters with citizens without _any_ objective level of suspicion. _Avery_, 137 F.3d at 352. Officer Johnson needed no justification at all for approaching Defendant, and Defendant chose to consensually engage with Officer Johnson. Up to this point, therefore, no _Terry_ stop occurred and the Fourth Amendment was not implicated.

To the extent a _Terry_ stop occurred, it began only when Officer Johnson grabbed Defendant's arm. At that point, a reasonable person would not have felt free to leave and, indeed, Defendant was not free to leave, as evidenced by his thwarted attempt to flee. However, Officer Johnson testified that he grabbed Defendant's arm directly in response to hearing the "metal on metal" sound that, based on his experience, sounded like a gun being dropped, and during the struggle that began Officer Johnson tried to "get him under control" so he could determine what, in fact, Defendant dropped.

Again, the Court finds guidance in _Foster_, where the _Terry_ stop following the initial consensual encounter was found valid where the odor of PCP alone gave the officer reasonable suspicion to detain the suspect temporarily in order to determine

---

[4] The Court further notes that Defendant relies on statements made in the police report, which he failed to introduce for admission into evidence at the suppression hearing.

if, in fact, the suspect was under the influence of PCP. <u>Foster</u>, 376 F.3d at 586. Here, Defendant provided reasonable suspicion to Officer Johnson the minute he dropped something sounding like a gun, which was an "objective manifestation" that Defendant was engaged in criminal activity and warranted further investigation. See <u>id.</u>, quoting <u>United States v. Cortez</u>, 449 U.S. 411, 417 (1981). Officer Johnson was thus justified in attempting to detain Defendant temporarily in order to determine if, in fact, it was a gun. Under the totality of the circumstances, Officer Johnson's attempt to conduct a Terry stop at that point was reasonable. Officer Johnson had been called at 3:00 in the morning by his partner, who he knew was conducting a drug investigation, to an area he knew to be a high crime area, in order to stop an individual his partner identified as someone involved in trafficking. When he approached the individual, Officer Johnson asked to see some identification, which the individual agreed to provide but noted he had to go retrieve it from the car. When the individual approached the car, Officer Johnson heard him drop something that created a sound that, based on his experience, sounded like a gun being dropped. Under those circumstances, he reasonably moved to detain the individual at that point. The Court finds no violation of the Fourth Amendment with that attempted detention.

Defendant argues that Officer Johnson had no personal

knowledge of any wrongdoing on Defendant's part and that he cannot be imputed with any knowledge of Officer Cunningham. The Court is not persuaded by that argument because, at the point at which Officer Johnson actually attempted the Terry stop, _i.e._, when he grabbed Defendant's arm, he indisputably had personal knowledge that Defendant may have been committing a crime as he himself heard the noise that he believed was a gun. Defendant did nothing to dispute Officer Johnson's experience or otherwise lead the Court to doubt that Officer Johnson's statement that, in his experience, the "thunk" he heard sounded like a gun being dropped. Defendant attempts to discredit Officer Johnson's testimony by contending that Officer White found the gun on the tire rather than the wheel well, which the Court finds to be a distinction without a difference as the gun was found exactly where Officer Johnson heard the sound. Officer White's testimony, that he found it on the "wheel...wheelbarrow...front right tire" of the car in no way casts doubt on Officer Johnson's testimony that he heard a "thunk" in that same location.

Because Officer Johnson's initial contact with Defendant was a consensual encounter, and because he had objectively reasonable suspicion based on his own knowledge that criminal activity was afoot when he heard Defendant drop what he believed to be a gun, Officer Johnson did not violate the Fourth Amendment when he attempted to detain Defendant. Consequently, there is no basis

for excluding the gun or the purported drugs seized. Defendant's motion is therefore DENIED (doc. 15).

SO ORDERED.

Dated: February 2, 2011        s/S. Arthur Spiegel
                               S. Arthur Spiegel
                               United States Senior District Judge